DUNNINGTON *v*. KIRK.

Opinion delivered May 6, 1893.

*Account—Appropriation of payments.*

> A running account, although composed of items partly secured and partly not, is so far one debt that the creditor has no election as to which item he will credit with a general payment, in the absence of any appropriation by the debtor, but such payment will be applied by law to the several items of the account in the order of their priority.

Appeal from Independence Circuit Court.

JAMES W. BUTLER, Judge.

Kirk brought this action against Dunnington and O'Tool to recover damages for the wrongful taking of three mules, 530 bushels of corn and 800 pounds of seed cotton. Defendants claimed that the property was rightfully taken under a deed of trust executed by plaintiff to O'Tool as trustee for the benefit of Dunnington. The deed of trust was to secure an indebtedness of $290 and such advances as Dunnington might make to plaintiff on or before October 1, 1889. Advances were made by Dunnington after October 1, which were not secured by the deed of trust. Certain payments, which were subsequently made without appropriation by Kirk, were credited by Dunnington on the later and unsecured items of his account. The controversy in this case turns upon Dunnington's right to make such appropriation.

The court instructed the jury as follows:

"1. The jury are instructed that when one person is indebted to another in a running account, and partial payments are made by the debtor to the creditor from time to time, then, unless the debtor makes an application of the payment or gives direction that they shall be applied to some particular part or parts of the account, or agrees with the creditor that the same may be

done, the law makes the application of such payment to said account in the order of its date, paying the oldest part of the account first; and this will be the rule of law, although one portion of the debt may be secured by a deed of trust and the other not secured. In this case if you find from the evidence that the defendant Dunnington had a running account against the plaintiff, beginning at or about the date of the deed of trust and continuing through the year 1889 and the year 1890, or some part thereof, and the plaintiff from time to time made payments to said defendant of cotton, corn and boards, and that the plaintiff did not direct to what portion of his indebtedness such payments should be applied, or agree with the defendant as to the same, then the law applies said payments to the extinguishment of plaintiff's debt in the order of dates thereof, paying the oldest items first."

Defendants asked, and the court refused, the following instruction:

"3. The court instructs the jury that if they believe from the evidence in this case that the plaintiff was indebted to the defendant on an account which was made after the maturity of the deed-of-trust debt, and the plaintiff made payments to the defendant either with property or the proceeds of property, which property was not embraced in the deed of trust given by plaintiff to defendant, and said payments were less than the unsecured account at the time the payments were made, and the defendant applied them as a credit on his account not secured by the deed of trust, you will find for the defendant Dunnington, unless you should further find that plaintiff, at the time of making said payments, directed the defendant to apply said payments to the mortgage debt."

The jury returned a verdict for the plaintiff, and defendants appealed.

*U. M. & G. B. Rose* and *Yancey & Fulkerson* for appellant.

1. In 34 Ark. 285, 38 *id.* 285, 47 *id.* 119, and 51 *id.* 377, this court held that where no appropriation is made by either party, the law appropriates the payments to the oldest or earliest items of the account. In this case there were *two* accounts—one secured, the other unsecured. Where no appropriation is made by the debtor, the creditor may apply the payments to any demand then due which he pleases. Munger, App. Pay. 32; Barbour on Payment, 345; 26 Ark. 513. See also Munger, App. Pay. 102, 120.

2. It was error to allow plaintiff to prove, as part of his damage, the value of the property which had been seized under the replevin brought by the defendant against him. Bennett, Lis. Pendens. sec. 343.

*Robert Neill* for appellee.

1. Instruction number one is clearly the law of this State. 30 Ark. 745; 38 *id.* 285; 47 *id.* 111; 51 *id.* 377; 1 Story, Eq. sec. 459; 2 Pars. on Cont. p. 633. In this case there was only one account, a continuous running account. The creditor had no right of election—unless there were *two debts.* 30 Ark. 750. Munger, p. 102, simply follows the rule in 30 Ark. 745, which is supported by Parsons. 2 Parsons, Cont. side p. 633, 6th ed.

2. After a controversy has arisen, it is too late to make an appropriation of payments. 51 Ark. 371.

HUGHES, J. There is conflict in judicial decisions, upon some questions, as to the rule governing the application of payments. The general rule is "that the party paying may direct to what the application is to be made. If he waives his right, the party receiving may select the object of appropriation. If both are silent, the law must decide."

The rule in this State is that where there is a single running account in which third persons are not interested, and a general payment is made (without application by the debtor), the creditor has no election to make the application, but the law will apply the payment to the several items of the account in the order of their priority, the first item on the debit side of the account being the item discharged or reduced by the first item on the credit side of it. In *Hughes* v. *Johnson*, 38 Ark. 295, the court said : '' The power to make the application to the earlier or later items of the account rested , wholly with the debtor. A running account, although composed of items partly secured and partly not, is in so far one debt, that the creditor has no election as to which item he will credit and which not, in the absence of any appropriation by the debtor.   *   *   The payment goes by the force of the law to the oldest items.'' It is held in *Truscott* v. *King*, 2 Selden, 147, that, '' where no specific application is made by the parties of payments upon a running account, they will be applied upon the first items of indebtedness, although the creditor may have held security for the payment of those items, and none for the final balance of the account.''

In 2 Parsons on Contracts (5th ed.), 633, it is said, ''And in general, the doctrine of appropriation, and the right of election, apply only where the debts or accounts are distinct in themselves, and are so regarded and treated by the parties. Where the whole may be taken as one continuous account, payments are, generally, but not universally, applied to the earliest items of the account.'' To sustain the text, he cites *Devaynes* v. *Noble*, 1 Meriv. 609 ; *U. S.* v. *Kirkpatrick*, 9 Wheaton, 720 ; *Jones* v. *U. S.* 7 How. 681 ; and other cases.

According to the decision in *Hughes* v. *Johnson*, 38 Ark. *supra*, there was but one debt in this case, so far

as the application of payments is affected. There was therefore no error in the court's first instruction, nor in the refusal of the court to give the third instruction asked for by the appellants.

Upon the trial, the appellant's counsel asked the witness O'Tool: "How much of the 535 bushels of corn was taken in the replevin suit by the constable?" To this question objection was made by the plaintiff on the ground that the corn taken by the constable in the replevin suit referred to by the witness was no part of the corn involved in this suit. The objection was sustained, the answer to the question was not permitted, and the appellant excepted. It does not appear very plainly from the evidence in the case that the replevin suit referred to in the question was a suit between the trustee and the appellee for the recovery of the corn, but we infer that it was. The question seems not to refer to the corn taken by the appellants without process, but to other corn included in the deed of trust, and which is not included in this suit. There was no error, therefore, in refusing to allow an answer to it to go to the jury.

The judgment is affirmed.

Bunn, C. J., did not participate.